**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CASE NO.  4:01CR441** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Judge John M. Manos** |
| ) | |
| **ERIC S. BOWKER,** ) | |
| ) | **SENTENCING MEMORANDUM AND** |
| **Defendant.** ) | **ORDER ON MOTION** |

On September 11, 2002, Eric S. Bowker, Defendant, was sentenced to ninety-six (96) months custody with the Bureau of Prisons, followed by three (3) years of supervised release, for violating 18 U.S.C. § 2261A(1) (interstate stalking); 18 U.S.C. § 2261A(2) (cyberstalking); 18 U.S.C. § 1708 (theft of mail); and 47 U.S.C. § 223(a)(1)(C) (telephone harassment).

On June 11, 2004, the Sixth Circuit affirmed the convictions and sentence, but remanded this case instructing the Court to rule on a pending motion for return of seized property.  See United States v. Bowker, 372 F.3d 365, 370 (6th Cir. 2004).

On February 28, 2005, the Supreme Court vacated the Sixth Circuit opinion and remanded this case for further consideration in light of United States v. Booker, 125 S. Ct. 738 (2005).  See Bowker

v. United States, 125 S. Ct. 1420 (2005).

On April 6, 2005, the Sixth Circuit reinstated its opinion affirming the convictions, but remanded this case for re-sentencing in light of Booker. See United States v Bowker, 125 Fed. Appx. 701 (6th Cir. 2005). Specifically, the Sixth Circuit instructed:

> On remand, the district court must impose a reasonable sentence within the applicable statutory maximums for the crimes of conviction. Although the district court will not be bound by the Guidelines, the court nonetheless must take account of the Guidelines together with other sentencing goals.

Id. at 702 (internal quotations omitted).

Thus, two matters are before the Court: (1) the motion for return of seized property; and (2) the Defendant's re-sentencing in light of Booker. For the following reasons, the Court **DENIES** the motion for return of seized property; and **RE-SENTENCES** the Defendant to ninety-six (96) months custody with the Bureau of Prisons, followed by three (3) years of supervised release.

## I. BACKGROUND

From June of 2000 to August of 2001, the Defendant sent several dozen strange, lewd, obsessive, and hostile letters and emails to Tina Knight, a reporter at WKBN Television in Youngstown, Ohio. In addition, he made over 100 phone calls to her home and work. The calls and letters continued even though she relocated to Charleston, West Virginia.

In February, 2001, the Defendant filed a lawsuit against Ms. Knight, alleging that she was stalking him. He later agreed to voluntarily dismiss the suit and stop contacting her. However, the calls and letters persisted and became more threatening. He also began sending letters to her parents in Medina, Ohio and started calling her neighbor and co-workers. On August 10, 2001, he sent her

photographs of himself at various locations in West Virginia. A credit card report indicated that he did, in fact, make purchases at a Kmart and Kroger in West Virginia, not far from her place of employment and residence. Throughout the ordeal, Ms. Knight testified that she was afraid to leave her home, fearing that the Defendant would rape her.

On August 29, 2001, the Defendant was arrested. At the time of arrest, police found in his possession, among other items, Ms. Knight's credit report, her credit card bill, her birth certificate, photos of her home, car and workplace, and maps of West Virginia.

On September 25, 2001, a federal grand jury returned a four-count indictment charging the Defendant with one (1) count of interstate stalking, in violation of 18 U.S.C. § 2261A(1); one (1) count of cyberstalking, in violation of 18 U.S.C. § 2261A(2); one (1) count of theft of mail, in violation of 18 U.S.C. § 1708; and one (1) count of telephone harassment, in violation of 47 U.S.C. § 223(a)(1)(C). (Docket No. 11.)

On February 5, 2002, the Defendant filed a motion for return of seized property. (Docket No. 44.) On May 29, 2002, he requested a ruling on his motion. (Docket No. 70.) On June 4, 2002, the Court denied his request.

On June 6, 2002, a jury found the Defendant guilty on all four counts, (Docket No. 82), and on September 11, 2002, he was sentenced to the custody of the Bureau of Prisons for a term of ninety-six (96) months, followed by three (3) years of supervised release. (Docket No. 102.)

This case has been remanded by the Sixth Circuit to address two issues: (1) the motion for return of seized property; and (2) re-sentencing in light of Booker.

On January 4, 2005, the Court ordered the government to list all of the seized property that remained in its possession and to provide a reason for not returning it to the Defendant. (Docket No. 161.) On January 31, 2005, the government filed its response. (Docket No. 163.) On February 17, 2005, the Defendant filed a reply. (Docket No. 164.) Finally, on July 25, 2005, the Defendant filed a sentencing memorandum. (Docket No. 183.)

## II. LAW AND ANALYSIS

### A. Motion for Return of Seized Property

Rule 41 of the Federal Rules of Criminal Procedure states in pertinent part:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). The general rule is that all evidence, unless contraband, is to be returned to the rightful owner once criminal proceedings have terminated. United States v. Hess, 982 F.2d 181, 186 (6th Cir. 1992) (citation omitted). The Sixth Circuit has stated that, "[a] district court has both the jurisdiction and the duty to return the contested property once the government's needs for it has ended." Id. at 187 (citation omitted).

Here, the government's response indicates that on August 7, 2002, thirty-four (34) items were returned to the custody of the Defendant's mother. (Docket No. 163, Exh. 1.) In fact, all of the items sought by the Defendant in his original motion are currently in his mother's possession. The Defendant did not contest this fact at the evidentiary hearing. Thus, the motion, with regard to these items, is

-4-

denied as moot.

The response also indicates that the government had seized an additional twenty-four (24) items that were not included in the Defendant's original motion:

1. Nextel cellular telephone
2. Radio Shack scanner
3. Photographs of Eric Bowker
4. Photographs of West Virginia
5. Nextel bill of Bowker dated February 17, 2001
6. Nextel bill of Bowker dated August 17, 2000
7. Map of Charleston, West Virginia
8. Bowker's Direct Merchant Bank bill for July 2001
9. State of Virginia Division of Motor Vehicles request for vehicle information
10. Certified mail receipt dated August 18, 2001
11. Disk containing "A Most Unfunny Story" text
12. Rite Aid receipt dated July 10, 2001 in Charleston, West Virginia
13. K-Mart receipt dated August 5, 2001
14. K-Mart receipt dated August 1, 2001
15. Email titled "The Trial of Dr. Death"
16. Printout of "Summary of Federal Laws"
17. Handwritten research on 47 U.S.C. § 223
18. Ohio State University Building Address list
19. Disks containing photographs of Tina Knight, Tina Knight's car, co-workers, hometown, and employment
20. Hand written notes about Tina Knight to include information about her birth certificate, telephone numbers, addresses, trash dates, social security number, and family member names and addresses
21. Tina Knight's Discover Bard bill from June 2001
22. Tina Knight's credit report
23. Tina Knight's birth certificate
24. Draft letters to Tina Knight

Items one through eighteen (1-18) have since been returned to the custody of the Defendant's mother. Then-counsel for the Defendant Jay Milano confirms that he had received these items and forwarded them over to the Defendant's mother. (Docket No. 159, Exh. 1 & 2.) The Defendant also did not contest this fact at the evidentiary hearing. Thus, the motion, with regard to these items, is

-5-

denied as moot.

Items nineteen to twenty-four (19-24) remain in the government's possession. The government requests that the Court deny the Defendant's motion with regard to these items because they are either contraband or very personal to the stalking victim. See Hess, 982 F.2d at 186 (stating that contraband items are not to be returned to the defendant) (citation omitted). The Court agrees that these items should not be returned to the Defendant. The Court notes that the Defendant was convicted of stalking and harassment. Accordingly, the Court will not order the return of items that include pictures of Ms. Knight, her personal records such as copies of her birth certificate and social security number, her personal financial records such as her credit report and credit card bill (which was stolen from her mailbox), or notes that contain personal information about her and her family. Finally, the Court will not order the return of any draft letters that the Defendant intended to send to Ms. Knight for the purposes of stalking and harassing her. The motion, with regard to these items, is denied.

### B. Re-Sentencing

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that sentencing enhancements based on a judge's determination under the then-mandatory guidelines violates the Sixth Amendment. Id. at 756. A separate majority remedied this constitutional violation by severing portions of the federal sentencing statute, rendering the guidelines advisory. Id. at 765. Thus, post-Booker, a sentencing judge must impose a sentence within the statutory range that considers both the guidelines and the other sentencing factors in § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed

> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentencing and the sentencing range established for [in the guidelines];
> (5) any pertinent policy statement [issued by the Sentencing Commission];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a); United States v. Jackson, 408 F.3d 301, 305 (6th Cir. 2005).

Here, pursuant to the 2000 Guidelines Manual, the adjusted offense level is 22 and the criminal history category is V, providing for a guideline range of 77-96 months. The Sixth Circuit specifically upheld this guideline calculation. See Bowker, 372 F.3d at 390-92. In doing so, the Sixth Circuit also upheld the three-level upward departure for extreme psychological injury pursuant to Guideline §§ 5K2.3 and 2A6.2 Application Note 5. Id.[1]

---

[1] Contrary to the Defendant's assertion, Booker does not change the sentencing calculation. In Booker, the Supreme Court held that the guidelines are unconstitutional to the extent that they are mandatory. 125 S. Ct. at 756. Post-Booker, district courts are still permitted to engage in judicial fact finding based on the preponderance of the evidence standard and enhance a defendant's sentence accordingly, as long as the sentence is within the statutory range. See Cirilo-Munoz v. United States, 404 F.3d 527, 532-33 (1st Cir. 2005); United States v. Guzman, 404 F.3d 137, 143 (2d Cir. 2005); United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). Thus, post-Booker, the Court is permitted to consider Ms. Knight's victim impact statement and SA James McNamara's expert testimony and enhance the Defendant's base offense level for extreme psychological injury even though neither of these two pieces of evidence were put before the jury.

According to the Sixth Circuit's remand order, the Court is required to consider the guideline range (77-96 months) and the other factors set forth in § 3553(a) to determine the appropriate sentence within the statutory range.[2]  See Bowker, 125 Fed. Appx. at 702.  Here, the Court re-imposes a sentence of 96 months imprisonment, followed by three years of supervised release.  In doing so, the Court considers (1) the guideline range of 77-96 months; (2) the intense, hostile, and threatening nature of the offenses that included stalking and harassing Ms. Knight for over a year; (3) the Defendant's overwhelming criminal history of 20 prior convictions; and (4) the need for deterrence and protecting the public from further crimes, including Ms. Knight who testified to the extreme psychological injury that the Defendant had caused her.  The Court does not have any current information on any cases with similar conduct and records to consider sentencing disparities.  However, the Court still imposes a sentence at the higher end of the guidelines given the extreme nature of the offenses and lengthy criminal history.  Restitution is not an issue in this case.

In short, the Court concludes that the previous sentence it imposed on September 11, 2002 is appropriate even under the now-advisory guidelines, including all of the previously-imposed special conditions: (1) mental health treatment; (2) prohibition on access to a computer and internet; (3) DNA collection; and (4) any other conditions deemed appropriate by the United States Probation Office.

---

[2]  Count 1: 5 years imprisonment, $250,000 fine, and 3 years supervised release (18 U.S.C. § 2261A(1)); Count 2: 5 years imprisonment, $250,000 fine, and 3 years supervised release (18 U.S.C. § 2261A(2)); Count 3: 5 years imprisonment, $250,000 fine, and 3 years supervised release (18 U.S.C. § 1708); and Count 4: 2 years imprisonment, $250,000 fine, and 1 year supervised release (47 U.S.C. § 223(a)(1)(C)).  The total statutory maximum is 17 years.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for return of seized property; and **RE-SENTENCES** the Defendant to ninety-six (96) months custody with the Bureau of Prisons, followed by three (3) years of supervised release.

**IT IS SO ORDERED.**


**Date: July 27, 2005**                                        */s/ John M. Manos*
                                                                                  **UNITED STATES DISTRICT JUDGE**