UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CASE NO. 4:01CR441 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| ERIK S. BOWKER, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

On June 13, 2011, this Court quashed several subpoenas filed by Defendant's counsel, Assistant Public Defender Jeffrey Lazarus. Specifically, the Court quashed two subpoenas. The first subpoena that was quashed, Doc. 368-2, was served on the United States Pretrial and Probation office on May 13, 2011, and sought the following:

> [A]ny and all records relating to all criminal defendants placed on electronic monitoring (EM) as part of their supervised release in the Northern District of Ohio since 2002. This should include the dates in which they were placed on the EM, the length of time of monitoring, and the date of termination.

The second subpoena that was quashed, Doc. 368-3, was also served on the Pretrial and Probation office on May 13, 2011, and it sought the following:

> [A]ny and all records relating to the electronic monitoring of Erik Bowker while he has been on supervised release. This is meant to include, but not limited to, the

1

dates, times, and locations, or any alarm signals relating to his electronic monitoring bracelet in 2010 and 2011.

Within the same order that quashed the subpoenas, the Court ordered Attorney Lazarus to show cause why he should not be sanctioned for abusing the subpoena process. On June 27, 2011, Attorney Lazarus filed his response. The Court now reviews the matter.

### *The Power to Sanction*

"Sanctions are not appropriate unless an attorney is shown to have acted in bad faith, with improper motive, or with reckless disregard of duty owed to the court, and decision to award attorney fees thereunder is committed to court's discretion." *Bidasaria v. Central Michigan University*, 2012 WL 488889, *10 (E.D.Mich. Feb.15, 2012) (citations omitted). 28 U.S.C. § 1927 does not require a showing of subjective bad faith, but "[m]ere negligence or inadvertence … will not support a § 1927 sanction." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001). Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id*. (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

> A court may exercise its inherent power to sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct was tantamount to bad faith. The three-part test to determine whether such bad faith was present is whether the district court found (1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing suit was for an improper purpose such as harassment.

*United States v. Aleo*, --- F.3d ----, 2012 WL 1673919, at *11 (6th Cir. May 15, 2012) (citations and quotations omitted). An order of sanctions may be upheld "even without an express finding of willfulness, bad faith or recklessness, but only if the record sets forth evidence that the party

2

acted in bad faith. The court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id*. at *12 (quotations and citations omitted).

As such, "it is well settled that courts have inherent authority to impose sanctions on an attorney for reckless or bad faith conduct during the course of litigation." *United States v. Wheeler*, 154 F.Supp. 2d 1075, 1078 (E.D.Mich. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 (1980); *United States v. Wallace,* 964 F.2d 1214. 1217-18 (D.C.Cir. 1992)).

> It has long been understood that [c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.  These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Chambers,* 501 U.S. at 43 (internal citations and quotations omitted.)

Among these inherent powers is the power to punish.  *Id.* at 44.   "This power reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial.'" *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987) (citations omitted)).  Thus, the Court may invoke its inherent power upon a finding of bad faith.  *Roadway Express*, *Inc. v. Piper*, 447 U.S. 752, 767 (1980).

The Court recognizes that the Sixth Circuit's recent decision in *Aleo*, *supra*, calls into

3

question the scope of the Court's inherent authority with respect to sanctions in a criminal proceeding. *Aleo*, 2012 WL 1673919, at *11, n. 13 ("It may be questionable whether the inherent authority to sanction even exists in a criminal case such as this one. An argument can be made that Federal Rule of Criminal Procedure 42, covering criminal contempt, is the sole mechanism for punishing bad-faith conduct in criminal cases."). The Court also acknowledges that "[t]o ensure that criminal defendants receive zealous advocacy, courts 'generally tolerate arguments on behalf of criminal defendants that would likely be met with sanctions if advanced in a civil proceeding.'" *Aleo*, *supra*, at * 14 (Sutton, J., concurring) (quoting *In re Becraft*, 885 F.2d 547, 550 (9th Cir. 1989)).

There can be no real dispute that Attorney Lazarus advanced claims that were meritless and that he should have known that those claims were meritless. In his subpoenas that were served on the United States Pretrial and Probation office, Attorney Lazarus sought "any and all records relating to all criminal defendants placed on electronic monitoring (EM) as part of their supervised release … since 2002. This should include the dates in which they were placed on the EM, the length of time of monitoring, and the date of termination." As this Court previously noted when the subpoena was quashed, probation files are confidential court records. 18 U.S.C. § 3153(c)(1). Absent court order or an applicable exception under 18 U.S.C. § 3153(c)(2), those files cannot be released. Moreover, Attorney Lazarus made no attempt to involve the Court. He did not provide notice to the Court that he intended on seeking this information, nor did he move the Court for an order that would allow him access to these confidential documents. As an assistant public defender, there can be no doubt that Attorney Lazarus was well aware of the fact that these files were confidential in nature and not subject to subpoena. Accordingly, the first two prongs of the

Court's sanctions analysis are satisfied.

However, with the record created herein, the Court cannot make a finding of bad faith with respect to the subpoenas. The record reflects that a nearly identical subpoena was served upon Oriana House.[1] When contacted about the subpoena, Attorney Lazarus informed Oriana House that he did not seek any identifying information about any of the individuals placed on electronic monitoring. Instead, he informed Oriana House that he solely sought information related to when monitoring began and how long that monitoring lasted. Attorney Lazarus further indicated that all identifying information of the individuals could be redacted.[2] This undisputed evidence supports Attorney Lazarus' assertions in his brief that he did not intend to seek out confidential information, despite his overly broad choice of language within the subpoena.

While the Court cannot formally sanction Attorney Lazarus because the record contains insufficient evidence to demonstrate he acted in bad faith, that does not suggest that Attorney Lazarus' actions were proper or in any manner within the scope of his duties to zealously represent his client. Instead, Attorney Lazarus drafted a subpoena that *by its plain language* requested documents that were clearly protected by law. Attorney Lazarus contends that he was required to utilize an admittedly overbroad subpoena in order to protect his client's rights. He is incorrect. Nothing in the law permits an attorney to issue an unduly broad subpoena. Rather, the subpoena must identify only those documents that are sought, and counsel is charged with only subpoenaing documents that are legally subject to subpoena. Attorney Lazarus failed to do so and thus fell

---

[1] Oriana House is a facility that provides chemical dependency treatment and community corrections services. It has been utilized as a quasi-halfway house in the past for those violating supervised release and those transitioning back into the public from a period of incarceration.

[2] Unfortunately, as detailed by this Court's order of July 5, 2011, (Doc. 379), Oriana House still provided sufficient information to allow identification of the offenders, thereby revealing confidential information.

short of his professional duties.

The Court also must disabuse Attorney Lazarus of the notion that he was required to subpoena the documents because his client specifically requested that he do so. As a colleague on this Court has noted:

> The court takes judicial notice of its own records in observing that this is the eleventh frivolous lawsuit filed by Erik Bowker in this court. In addition, Mr. Bowker has filed at least fifteen frivolous cases in the United States District Court for the Middle District of Pennsylvania, one case in the District Court for the Eastern District of Pennsylvania, three cases in the District Court for the Middle District of Florida, three cases in the District Court for the Southern District of West Virginia, and two cases in the District Court for the Northern District of Georgia.

*Bowker v. Bakeman*, Case No. 1:09CV846, Doc. 2 at 3-4. Furthermore, despite having counsel, Bowker routinely filed his own pleadings within this criminal matter, raising more frivolous arguments. Thus, any assertion by Attorney Lazarus that he was compelled to issue these subpoenas to appease his client is unfounded. Instead, Attorney Lazarus was required to exercise his professional judgment and inform his client that issuing these subpoenas would be improper.

Based upon the above, the Court finds that Attorney Lazarus suffered several lapses in professional judgment. However, as the Court cannot find that the subpoenas were issued in bad faith, no formal sanction shall issue in this matter.

### *Conclusion*

Attorney Lazarus is advised in the future to properly tailor his subpoena requests to solely those documents which are actively being sought and are subject to subpoena. If future subpoenas are issued that contain similarly overbroad requests seeking confidential information, it will likely demonstrate at that point that the subpoenas are in fact being issued in bad faith.

Accordingly, at this time, no sanction shall issue.

    IT IS SO ORDERED.


June 5, 2012                                                   /s/ *John R. Adams*
Date                                                      Judge John R. Adams
                                                           United States District Court